HENRY HENNIGER *et al. v.* CITY OF MEMPHIS *et al.*

(*Jackson.*  April Term, 1908.)

1. **MUNICIPAL CORPORATIONS.** City ordinance is not invalid as creating a new office under a statute authorizing an assistant to another officer, when.

Under a statute (Acts 1905, ch. 54, secs. 55-60) creating the office of a city register for a certain municipal corporation (Memphis); requiring the register to keep all the city's papers, documents, books, and accounts of its transactions, and to publish financial statements; providing that the register shall have such clerical help and assistance as the city council shall deem necessary; and requiring him to give bond to account for moneys passing through his hands, a city ordinance creating the office of city paymaster whose incumbent is to be elected by the city council, and prescribing certain duties to be performed by the paymaster in connection with office and duties of such register so as to make the paymaster in effect an assistant to the register, is not invalid as creating a new office. The misnaming of the office or officer is immaterial and unimportant. (*Post,* pp. 556-566.)

Acts cited and construed:  Acts 1905, ch. 54, secs. 55-60.

Case cited and approved:  University v. Knoxville, 6 Bax., 171.

2. **SAME.** City ordinance as to disbursement of funds does not infringe charter as to expenditure upon commissioners' warrants, when.

The charter of the city of Memphis (Acts, 1879, ch. 11, sec. 9), requiring the city's funds to be expended upon the warrants of two of the fire and police commissioners is not infringed or violated by a city ordinance merely providing for the disbursement of the funds by the register, instead of by the heads of departments as before, since the ordinance does not prevent the commissioners from drawing the funds by warrants payable to the city register instead of the heads of departments as before. (*Post,* pp. 566, 567.)

Acts cited and construed: Acts 1879, ch. 11, sec. 9.

3. SAME. City council does not control expenditures by pro-
viding and electing an assistant to verify accounts and to
countersign checks, when.

A statute prohibiting the city council from controlling the expen-
diture of its appropriations is not violated by a city ordinance
providing, an assistant to the city register, to be elected by the
city council, and misnamed city paymaster, who has nothing to
do with directing the expenditure, but only examines accounts
against the city to see whether they are made out in accordance
with the city's contracts, and countersigns checks which the
register has signed. (*Post, pp.* 567, 568.)

Acts cited and construed: Acts 1905, ch. 54, sec. 26.

---

FROM SHELBY.

---

Appeal from the Chancery Court of Shelby County.—
A. B. Pittman, Judge, sitting by interchange in the
place of Chancellor Heiskell.

Carroll & McKellar, for complainants.

M. G. Evans, for defendants.

---

Mr. Justice Neil delivered the opinion of the Court.

The following ordinance was passed by the legislative
council of the city of Memphis:

"An ordinance creating the office of city paymaster
and providing for his duties.

"Section 1. Be it ordained by the legislative council
of the city of Memphis, that the office of city paymaster

be, and the same hereby is, created, the incumbent of said office to be elected by the legislative council for a term of two years, and his salary to be the sum of two thousand ($2,000) dollars per year, payable in equal monthly installments.

"Sec. 2.   Be it further ordained, that from and after the passage of this ordinance, that all employees of the city shall be paid by checks drawn by the city register, payable to order of said employee and countersigned by the paymaster.

"Sec. 3.   Be it further ordained, that it shall be the duty of the paymaster to audit all bills of goods bought for the city of Memphis, by the various departments, to see that the prices charged therefor are no more than the market price of the same, and to see that said goods are delivered to the department of the city entitled to use the same.

"Sec. 4.   Be it further ordained, that it shall be the duty of the paymaster to compute the time of the time books kept by the foremen of the various gangs employed by the city, check the same with the pay rolls of the respective departments, as same are filed in the office of the city register, and to see if said employees have really been at work.   A check for the total amount of said pay rolls is to be made payable to the city register and when signed as required by the fire and police commissioners, and the city tax receiver, as now provided by law, the same shall be deposited in the city's depository bank,

and the checks as provided for in the above section of this ordinance for the payment of the employees of the city are to be drawn against said deposit as above provided.

"Sec. 5. Be it further ordained, that after all bills for supplies bought by the various departments of the city have been audited and found correct, it shall be the duty of said paymaster to approve same with his O. K., and after receiving the O. K. of the auditing committee appointed by the council, checks shall then be drawn for the amount of each account, which checks will be signed by the fire and police commissioners and city tax receiver. It will then be the duty of the city register to pay said bills and take duplicate receipts, as has been the custom heretofore.

"Sec. 6. Be it further ordained, that before said paymaster shall assume charge of said office, that he be required to execute a good and solvent bond in the sum of ten thousand dollars, which bond shall be approved by the mayor and city attorney.

"Sec. 7. Be it further ordained, that this ordinance take effect from and after its passage, the public welfare requiring it.

"Passed final reading Thursday, March 5, 1908.

JAMES H. MALONE, Mayor.

"Attest: ENNIS M. DOUGLAS, City Register."

A bill was filed by the complainants, as taxpayers of the city, questioning the power of the legislative council to pass this ordinance on the ground that no power ex-

isted to pass such an ordinance inasmuch as it was the creation of a new office.

It is further charged in the bill that the ordinance was in direct conflict with, and in violation of, the charter of the city of Memphis, "in that under the said charter the duty of handling the city's funds and paying the same out is imposed upon the fire and police commissioners," and that the legislative council cannot, by ordinance, take away these duties and responsibilities from the said fire and police commissioners, and require that they shall be performed by the city paymaster, and that the ordinance not only altered and changed the duties of the fire and police commissioners, but also those of the city register.

It is also alleged that the ordinance was in violation of sections 55, 56, 57, and 58, c. 54, pp. 115, 116, of the Acts of 1905, amending the charter of the city of Memphis, in that it imposed duties upon the city paymaster which the act had imposed upon the city register.

The prayer of the bill was that an injunction should issue restraining the city paymaster from exercising the functions assigned to him by the ordinance, and that the action of the legislative council in passing the ordinance should be declared void.

The case was tried before Judge Pittman, sitting by interchange in the place of Chancellor Heiskell, with the result that the injunction was discharged and the bill was dismissed. Thereupon the complainants appealed to this court, and have here assigned errors, which

are in substance that the judge of the court below acted erroneously in refusing to sustain the objection made to the ordinance and in failing to declare the said ordinance void.

Upon the hearing below the following facts were agreed to:

"In this cause, for the purpose of saving time and expense of taking proof, it is agreed by counsel as follows:

"(1)   That before the creation of the said office of city paymaster, under said ordinance complained of in this cause, the city employees, numbering about one thousand persons, were paid by a check drawn in a lump sum, signed by the mayor and two commissioners, and made payable to the head of the department in which the employee was situated, the head or some officer of the department paying out the individual sums going to each employee, sometimes by check and sometimes in currency, and taking his receipt therefor, and thereafter filing his vouchers with the city register.   "(2)   It is agreed that in the last report of the expert accountant employed to audit the city's books is found the following: 'I will call your attention to Exhibit No. 13, showing the pay rolls for the engineering department and the board of health and garbage department, amounting to $266,406.05 for the year 1907.   Of this amount, seventy-six per cent. or $201,476.73, was disbursed by a cross-mark being entered on the pay roll against each em-

ployee's name, and witnessed by the paying officer of the department'—and that this statement is true.

"(3)   It is agreed that the legislative council felt there was a necessity for the creation of such office.

"(4)   It is agreed that the amount of taxes paid by complainants is correctly stated in the answer of defendant Utley, and that the total amount annually raised by the city by direct taxation is $1,100,000."

We think the decree of the lower court was correct.

We do not deem it necessary to go into the general question as to when a municipal corporation may create new offices, since we regard the present case as controlled by chapter 54 of the Acts of 1905. By sections 55 to 60, inclusive, of that act, which was an amendment of the charter of the city of Memphis, a provision is made for the creation of a new office, known as "city register," and the office is in fact created by that act. By section 57, among other duties, it is declared that he shall have charge and custody of all books, papers, documents, and accounts connected with the city government, and he shall be held responsible for the safe-keeping thereof. By the next section it is provided that he shall keep an accurate and correct account of all transactions of the city government, and an account of the receipts and disbursements of all the funds of the city, and it is required that he shall publish a statement once every six months, showing in detail the financial condition of the city government. In the same section

it is provided that he shall have such clerical help in his work as the legislative council shall deem necessary for the proper performance of his work. Section 59 provides that he shall give a bond for the faithful performance of his duties, and to "faithfully account for all moneys that may be turned over to him, or pass through his hands as register of the city."

We think that within these duties devolved by the statute upon the register there are fairly included the duties imposed upon him by the ordinance in question. Among these duties, it is perceived, under section 4, the register is to receive a check for the total amount of the pay rolls, signed by the fire and police commissioners and the city tax receiver, and is to deposit the money in the city's depository bank, and that he is to draw checks from this fund to pay the employees referred to in section 2. This payment of money to him is contemplated, it seems, by section 59 of chapter 54 of the Acts of 1905, above referred to; that is, it is contemplated that money shall be paid over to him.

By section 5 of the ordinance under examination it seems that, after bills for supplies bought by the various departments of the city have been audited and found correct, and approved by the paymaster and the auditing committee appointed by the council, checks are to be drawn for the amount of each account, to be signed by the fire and police commissioners and the city tax receiver, and then that the city register is to pay these bills and take duplicate receipts.

These duties, as above stated, we think, fall within the general duties imposed upon the city register, as by sections 55 to 60, inclusive, of the Acts of 1905, since they are conducive to keeping an accurate and correct account of the receipts and disbursements of the funds of the city, and to a general oversight of the financial condition of the city, which seems to be required by section 58.

Now, the duties required of the so-called paymaster, in the ordinance in question, are simply by way of assistance to the register, and he is in fact nothing but an assistant register, and is misnamed "paymaster." The name, however, is unimportant.

The soundness of this view, we think, will be manifested by a short statement of the duties devolved upon the so-called paymaster by the ordinance referred to. By section 2 he is to countersign the checks drawn by the register. This is to guarantee correctness, and to act as an additional safeguard, making sure the accuracy of the work of the register, to prevent possible duplication of checks, or the statement of improper amounts therein, or the naming of improper payees. By section 3 it is made the duty of the so-called paymaster to examine all bills for goods bought for the city by the various departments, in order that it may be ascertained by him whether the prices charged therefor are more than the market price of the goods, and that it may be seen that the goods are delivered to the department of the city entitled to use them. This is a distinct aid to

the register in the performance of his duty of looking
after the disbursement of all the funds of the city.   The
same is true of the duty devolved upon the so-called pay-
master in section 4, by which he is required to compute
the time on the books kept by the foremen of the various
gangs employed by the city and compare the same with
the pay rolls of the respective departments and see if the
employees have really been at work; that is, to prevent
the payment of moneys to people nominally on the pay
rolls, but who really have not done the work for which
they are claiming payment.   The same observation is
true as to the duties devolved by section 5 upon the so-
called paymaster, by which he is required to examine all
bills for supplies bought by the various departments,
to ascertain whether they are correct or not, and, if he
shall find that they are correct, to note the fact on the
bills.

In *East Tennessee University* v. *Knoxville*, it is said:

"It is the settled law that the powers of corporations
of all kinds are to be strictly construed; but this strict
construction has never confined the construction of the
power to its word and letter, but everything necessary
and proper for carrying into execution the granted
power has always been conceded by the strictest con-
structionists."   6 Baxt., 171.

In McQuillin on Municipal Ordinances, it is said, in
section 49:   "As it is a well-established principle that a
municipal corporation may exercise such powers as are
reasonably proper to give effect to powers expressly

granted, the rule stated in the last paragraph [strict construction] does not confine the construction of the powers to the strict word and letter; but whatever is necessary and proper to carrying into execution the granted powers, or the powers recognized as belonging to the municipal corporation, has always been conceded by the strict constructionists. The construction should not be so strict and literal as to defeat the whole machinery of municipal regulation. The strictness then to be observed in giving construction to municipal charters should be such as to carry into effect every power clearly intended to be conferred on the municipality, and every power necessarily implied in order to a complete exercise of the powers granted."

In speaking for the supreme court of Michigan, Cooley, J., observed:

"There is a principle of law that municipal powers are to be strictly interpreted; and it is a just and wise rule. Municipalities are to take nothing from the general sovereignty, except what is expressly granted. But when a power is conferred which in its exercise concerns only the municipality, and can wrong or injure no one, there is not the slightest reason for any strict or literal interpretation, with a view of narrowing its construction. If the parties concerned have adopted a particular construction not manifestly erroneous, and which wrongs no one, and the State is in no manner concerned, the construction ought to stand. That is good sense, and

it is the application of correct principles in municipal affairs.

"While a corporation can do no act for which authority is not expressly given, or may not be reasonably inferred, 'if we were to say,' to employ the language of the supreme court of Connecticut, 'that they can do nothing for which a warrant could not be found in the language of their charters, we should deny them in some cases the power of self-preservation, as well as many of the means which are necessary to effect the essential object of incorporation; and therefore it has long been an established principle in the law of corporations that they may exercise all the powers, within the fair intent and purpose of their creation, which are reasonably proper to give effect to powers expressly granted. In doing this they must have a choice of means adapted to ends, and not be confined to any one mode of operation.'"

In the light of these principles, we think that the conclusion we have reached is but a fair construction of the provisions of the amendatory act of 1905, and of the powers therein conferred upon the register, and upon the legislative council to furnish assistance to the register.

We do not think that the construction is in violation of section 9 of the original charter act of 1879 (Laws 1879, p. 23, c. 11), as insisted by counsel for complainant. That section provides: "Said taxes shall be collected by the county trustee in lawful money of the United States, as other State taxes are collected, each

fund by him to be kept separate, and to be paid out by him for the purposes specified, upon joint warrants of two of said commissioners."

The custom heretofore, as shown by the agreed statement of facts, has been for the checks to be drawn by two of the said commissioners—that is, two of the fire and police commissioners—and deposited in bank to the credit of various heads of departments, and the money was then paid out, by the head or some officer of the departments, to the individuals in his department. There is nothing in the ordinance in question which prevents money being drawn in the same way by the fire and police commissioners. The only difference is that, instead of being paid out to the one thousand employees of the city by the heads of departments, or some subordinates under them, it is paid out by the city register. We can see in this nothing to interfere with the authority of the board of fire and police commissioners, as previously exercised. They draw the money from the county trustee on their check as heretofore. They simply draw it in favor of a different officer; and no one can doubt, in view of the facts agreed upon, that the new system of disbursement is far better than the old, since it would necessarily operate as a check upon fraud or innocent mistake in the disposition of the funds of the city.

It is insisted that the ordinance is in violation of section 26 of the act of 1905. That section reads as follows:

"That the legislative council shall have no power through any committees or otherwise to superintend, control or direct the expenditure of funds appropriated by it for any purpose whatever, or to approve warrants for paying out the same. Whenever an appropriation shall be made for any purpose not coming strictly under the control of any particular office or board in the executive department of the government, the ordinance making the appropriation shall direct under whose control it shall be expended, provided that in every case such expenditure shall be made under the direction of the mayor or the fire and police commission, or as the legislative council shall deem best. But no contract amounting to over $500 shall be awarded or let until after proper advertisement."

We see nothing in the ordinance that in any way contravenes this section. It by no means can be construed as a method of control by the legislative council of the expenditure of its appropriations. The so-called paymaster has nothing to do with directing the expenditure, but only examines accounts against the city to see whether they are made out in accordance with the city's contracts, and countersigns checks which the register has signed.

In what has been said we have disposed of all the errors assigned, with the result that we find no error in the judgment of the court below, and it must be affirmed, with costs.